# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | Case No. 17-CV-00748 |
| ) | |
| v. ) | Hon. Amy J. St. Eve |
| ) | |
| COLUMBIA COLLEGE CHICAGO, et. ) | |
| al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On November 7, 2017, Plaintiff John Doe ("Doe") brought the present Amended Complaint against Defendants Jane Roe and Columbia College Chicago ("CCC"), collectively "Defendants," in which he added a breach of contract claim against CCC to his previous claims. Before the Court is CCC's motion to dismiss the breach of contract claim brought pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants CCC's motion to dismiss.

## BACKGROUND

This case arises from an alleged sexual assault that occurred at CCC and the discipline that resulted from that alleged assault. Plaintiff and Defendant Roe were both students at CCC in 2015, and after they had a sexual interaction on December 11, 2015, Roe accused Plaintiff of sexually assaulting her when she was incapacitated by alcohol. (R. 1, Compl. ¶¶ 4, 22-23.) CCC then suspended Plaintiff for the 2016-17 academic year—a decision Plaintiff claims was wrongful. (*Id.* ¶ 23.) Doe alleges that CCC violated its own policies by failing to adequately

address his complaints of harassment and by suspending him without sufficient evidence of misconduct.

In considering this motion, the Court presumes familiarity with the background of this action as set forth in its previous order and does not recite a detailed background here. The Court will provide a brief factual and procedural background focusing on the allegations relevant to Doe's breach of contract claim.

## I. Procedural Background

On October 25, 2017, the Court dismissed all Doe's claims against CCC. (R. 47, October 25, 2017 Opinion.) The Court dismissed Doe's Title IX claims largely because Doe failed to allege that any harassment or discrimination he suffered was gender-based and because he failed to allege that CCC treated similarly situated individuals differently than him. (*Id.*) The Court dismissed Doe's promissory estoppel claim finding that the language in CCC's policies did not constitute the type of unambiguous promise required to support such a claim. (*Id.*) The Court also dismissed Doe's other Illinois common law claims. (*Id.*) Although the Court gave Doe leave to amend these claims, Doe has included the exact claims the Court dismissed without adding new allegations to attempt to cure the defects in his original claims. Accordingly, these claims remain dismissed.

In his Amended Complaint, Doe only adds one new claim—a breach of contract claim in Count XI. (R. 50, Am. Compl. ¶¶ 209-13.) CCC now moves to dismiss this claim.

## II. The Incident and CCC's Investigation

In February 2016, Roe filed a complaint with CCC alleging that Doe sexually assaulted Roe on December 11, 2015 when she was incapacitated by alcohol. (*Id.* ¶ 4.) In her complaint, Roe alleged that, without consent, Doe kissed her, disrobed her, touched her genital area and rear

end, put Roe's hand on his genital area, and physically prevented her from leaving the room. (*Id.*, Ex. A1 28.)[1] On February 3, 2016, Sarah Shaaban, CCC's assigned investigator, met with Doe to discuss Roe's allegations, and at that initial meeting, Doe did not identify any witnesses or additional evidence. (*Id.* 29.) Shaaban created an intake form after this meeting, and the form indicates that Doe and Roe met in fall 2015 and began texting casually. (*Id.* 129.) The form also indicates that Doe took LSD on December 11, before his encounter with Roe. (*Id.* 130.) In the meeting, Doe told Shaaban that he and Roe engaged in consensual oral sex and kissing, and that she texted him the next day indicating that she had a good time. (*Id.*) Shabaan also met with Roe and created an intake form after this meeting, which states that Roe told Shabaan that Doe had engaged in sexual conduct with Roe while she was incapacitated. (*Id.* 133.)

On February 26, 2016, Doe met with Beverly Anderson, CCC's Title IX Coordinator, who informed him that she had determined that, under CCC's Student Sexual Misconduct Policy & Procedures ("SMP"), she believed a hearing was necessary. (*Id.* 15, 17.) Doe responded with a letter on March 13, 2016, in which he indicated that any allegations of sexual misconduct were false and informed Anderson that Roe and her friends had defamed him and physically assaulted him. (*Id.* 1; Am. Compl. ¶¶ 8-15, 28.) Doe alleges that he promptly reported the physical assault to security. (*Id.* ¶ 30.) CCC Assistant General Counsel Adam Weiss responded to Doe's letter and asked Doe to provide him with the names of the individuals who assaulted him and posted about him on social media. (Ex. A1 19.) Doe did not provide those names, and instead, indicated that he had already provided those names to a CCC security guard, Marco, who

---

[1] In providing the factual background, the Court often refers to documents relating to CCC's investigation and hearing, which Doe attached to his Amended Complaint. As noted below, when ruling on a motion to dismiss, the Court may consider documents attached to the pleadings without converting the motion into a motion summary judgment, as long as the documents are referred to in the complaint and central to the claims. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014); Fed. R. Civ. P. 10(c).

3

explained that he was already aware of allegations against Doe. (*Id.* 22.) Doe requested that CCC provide any information it had collected about the defamation and assault incidents. (*Id.*)

In response, Anderson requested to meet with Doe, and he declined to do so without representation. (*Id.* 23-24.) On March 29, 2016, Anderson replied that Doe could bring a support person pursuant to the SMP. (*Id.* 25.) Doe responded that he would prefer to discuss the matter over email, and noted that Roe's friends "flipped [him] off" on campus. (*Id.* 26.) Anderson responded that she would "look into" that incident. (*Id.* 27.) On April 8, 2016, Doe sent CCC a social media post that stated: "@coolandcozy one of my best friends punched [Doe] in the face. [I]t was immediately reported to the police and the dean. Isn't that cute." (Am. Compl. ¶ 31.) On April 8, 2016, CCC Associate Dean Wilson-Taylor responded to Doe in a letter stating that CCC was not able to initially identify the student, but that CCC had addressed the issue with the female student and asking Doe to inform him if the student interacted with him at all. (*Id.* ¶ 32.) Ron Sodini, Associate VP for Campus Safety, also contacted Doe and met with him on April 14 and April 18 to address his concerns. (Ex. A1 54, 56.)

On or about April 22, 2016, Doe informed CCC that a CCC student texted Doe's then girlfriend, who is now his wife, and told her he was a "rapist" who was "lucky he has his teeth." (Am. Compl. ¶ 40.) On April 25, 2016, CCC sent Doe a letter informing him that CCC had spoken to the student and told him not to have any contact with Doe or his wife. (*Id.* ¶ 41.) CCC also contacted Doe's step-mother to inform her that CCC was addressing the issues with Doe. (Ex. A1 72-73.) Despite these communications, Doe alleges that CCC refused to accommodate Doe's wife when she wanted to be in a different class than Roe after Roe threated to fight her on social media. (*Id.*) Doe alleges that these interactions are evidence of CCC's repeated refusal to discipline students who were engaging in retaliation in violation of Title IX. (*Id.* ¶¶ 42-43.)

4

## III. CCC's Disciplinary Proceeding

Doe claims that he repeatedly put CCC on notice that its disciplinary proceeding violated its own policies. (*Id.* ¶ 45.) In a March 13 letter, for example, Doe informed CCC of the following violations, among others:

- SMP § XIV(C)(1) – "the Coordinator . . . shall serve . . . the Respondent with written notification than an Actionable claim has been filed, a description of the type of Sexual Misconduct alleged . . ., and the investigator's name."

- SMP § XIV(C)(2) – "the Coordinator shall meet . . . the Respondent to apprise [him] of [his] rights under this Policy and to . . . provide . . . notice of the types of information that likely will be disclosed during the investigation. . ."

- SMP § 1 XII – CCC "shall complete an adequate, reliable, and impartial investigation."

(*Id.*) CCC responded by informing Doe that its policies were designed to comply with the rules and regulations issued by the Department of Education's Office of Civil Rights ("OCR"), including providing due process to the alleged perpetrator and employing procedures designed to lead to supportable decisions. (*Id.* ¶¶ 46-47.)

Doe claims CCC violated its own policies because it completed its "investigation" of the incident and scheduled a disciplinary hearing before Doe had access to Roe's complaint and allegations and then informed Doe of Roe's accusations in person not by mail or email as CCC's policy requires. (*Id.* ¶ 48.) At the time of Doe's meeting with CCC officials, CCC had only provided Doe with an email asking him to meet, an email prohibiting him from entering certain CCC buildings, and an email stating that he may have violated CCC's sexual misconduct policy. (*Id.* ¶ 49.) Doe claims that he was thus denied the opportunity raise a conflict of interest issue with regard to the CCC investigator or to submit evidence and witnesses, and that he was not updated on the status of the investigation. (*Id.* ¶ 50.)

Despite Doe's allegations, Anderson did provide Doe with a letter on April 4, detailing the allegations against him and responding to the concerns in Doe's March 13 letter. (Ex. A1 28-31.) CCC's Title IX Deputy Coordinator also wrote Doe and offered to arrange an academic advisor for Doe, schedule a meeting with Anderson, or provide academic accommodations. (*Id.* 54.) On April 19, Anderson sent Doe a letter describing the hearing process and the rights of both parties. (*Id.*) The letter explained that Roe had accused Doe of three types of sexual misconduct, and noted that although he could not cross-examine witnesses at the hearing, he could submit questions to the Hearing Panel. (*Id.* 54-55.) The letter noted that both Roe and Doe had met with Shaaban one time, that no other meetings between Shaaban and the parties occurred, and that interim remedial measures were available to both parties. (*Id.* 54-56.) The letter also explained that each party would be able to review the investigation materials, but neither party could review training materials or a log of all investigation materials. (*Id.*) Doe disagreed with much of Anderson's letter in a response letter dated April 22, 2016. (*Id.* 57-62.)

On April 22, Anderson wrote a letter to Doe providing a timeline for the investigation, instructing him to provide any additional witnesses, and offering him the opportunity to meet the investigator in person. (*Id.* 65-66.) Doe submitted a written statement to CCC on April 25, 2016. (Am. Compl. ¶ 53.) In the statement, Doe provided the names of multiple witnesses he and Roe interacted with the night of the incident and claimed that their physical interactions were completely consensual. (*Id.*) Doe also claimed that he had suffered retaliation and that he would be willing to withdraw from CCC and not reapply if CCC would allow him to withdraw in good standing. (*Id.*) Doe claims that he wrote this statement because CCC refused to identify the policies he was accused of violating, refused to include facts he submitted in its investigation, and refused to provide him with information about the evidence Roe provided. (*Id.* ¶¶ 54-57.)

On April 26, CCC provided Doe with a copy of the information Roe submitted, and on April 27, Doe responded to Roe's submission. (Ex. A1 71.) That same day, CCC informed Doe that he had a right under the SMP to review all of the investigation materials after the issuance of a notice of hearing letter. (*Id.*) Anderson also informed Doe that CCC would consider a request to submit a toxicology report. (*Id.*) On April 29, Anderson also responded to Doe's request for accommodations and asked him for information about the classes for which he needed an accommodation. (*Id.* 74.) The parties engaged in additional communications about accommodations, but ultimately, they never occurred. (*Id.* 75, 78, 94.)

On May 6, Anderson wrote to Doe informing him that CCC would hold a hearing and advising him of the specific allegations against him and his rights during the hearing. (*Id.* 83-84.) On May 8, Doe responded by asking to review the investigation materials and asking for a hearing date that would allow him 10 days to review the materials. (*Id.* 85.) On May 12, 2016, CCC provided Doe with access to the investigatory file, but Doe still did not receive CCC's investigator's interview notes. (Am. Compl. ¶¶ 58-59.) Doe alleges that the investigative file did not contain information about Roe's receipt of medical treatment, and he claims CCC removed this exculpatory information from the file. (*Id.* ¶ 60.) On May 15, Doe requested a hearing on May 23, and CCC ultimately scheduled the hearing for May 23. (Ex. A1 94, 139.)

Doe and his advisor attended the CCC hearing, as well as CCC's attorney, the Hearing Panel Members, and Roe and her advisor, who attended by Skype. (Am. Compl. ¶ 62.) The Hearing Panel found by a preponderance of the evidence that Roe falsely alleged that Doe physically held her down and that he forced her to engage in non-consensual kissing. (*Id.* ¶ 63.) Nevertheless, the Hearing Panel found Doe responsible for sexually assaulting Roe after determining her testimony was more credible than Doe's. (*Id.*) Specifically, the Panel found by

a preponderance of the evidence that Doe violated the SMP by, without Roe's consent, disrobing Roe, touching her genital area and rear end, putting Roe's hand on his genital area, performing oral sex on Roe, and ignoring Roe's repeated requests for the sexual interaction to stop. (*Id.*, Ex. A1 139.) As a result, on June 7, 2016, CCC suspended Doe for the 2016-17 academic year and barred him from ever living in a CCC residence hall. (Am. Compl. ¶ 64.)

On June 23, 2016, Doe appealed the Hearing Panel's decision. (*Id.* ¶ 65.) In his appeal, Doe claimed that he did not assault Roe and that CCC conducted an inadequate and biased investigation. (*Id.*) Doe argued in the appeal that Roe made contradictory statements, that a toxicology expert proved she was not unconscious the night of the incident, he passed a polygraph test showing he did not assault Roe, and three students stated that Roe was not incapacitated. (*Id.*) Doe's appeal claimed that CCC's investigation did not comply with the SMP and resulted in a biased decision that CCC should have reversed. (*Id.*) On July 11, CCC acknowledged receipt of Doe's timely appeal and sent it to Roe for a response. (*Id.* ¶ 66.) Roe responded on July 8, and on July 13, CCC assigned Joe Steiff as the Appeals Officer for Doe's appeal. (*Id.* ¶¶ 67-68.) On July 15, Doe sent CCC a letter challenging Steiff for having a conflict of interest because he created an educational documentary entitled "How Will I Tell? Surviving Sexual Assault" that told the story of a victim of sexual assault. (*Id.* ¶ 69.) In response, CCC replaced Steiff with Elizabeth Davis-Berg an Associate Professor of Science and Mathematics. (*Id.* ¶¶ 18, 70.) Davis-Berg rejected Doe's appeal on August 22, 2016. (*Id.* ¶ 71.)

IV. **Breach of Contract Allegations**

Doe alleges that he enrolled at CCC and paid tuition, fees, and other expenses. (*Id.* ¶ 210.) He alleges that he did so in reliance and with reasonable expectation that CCC would implement and enforce CCC policies and that those policies would comply with applicable law,

8

including Title IX. (*Id.*) Doe claims that CCC policies create an express contract, or alternatively, an implied in law or in fact contract between Doe and CCC, and CCC repeatedly breached its own policies and Doe's rights under Title IX incorporated into CCC policies. (*Id.* ¶¶ 211-12.) Doe further alleges that he, at all times, complied with CCC's policies, and CCC's breaches were wrongful, without justification, and caused him damages. (*Id.* ¶ 213.)

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).

In determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). When ruling on motions to dismiss, courts may also consider documents attached to the pleadings without converting the motion into a motion summary judgment, as long as the documents are referred to in the complaint and central to the plaintiff's claims. *See Adams v. City of Indianapolis*, 742 F.3d 720,

9

729 (7th Cir. 2014); Fed. R. Civ. P. 10(c). Because Plaintiff attaches photocopies of documents involved in CCC's investigation that are central to his claim, the Court may consider these attachments in ruling on the present motion.

## ANALYSIS

### I. Non-Breach of Contract Claims

Other than adding a breach of contract claim (Count XI), Doe has not amended any of the allegations from his initial Complaint, which the Court dismissed as to CCC. In his Response, Doe explains that he included his previously dismissed claims in his Amended Complaint to preserve those claims for appeal. (R. 59, Pl.'s Resp. 1.) To the extent Doe has attempted to re-assert any of his Title IX claims in his new breach of contract claim by alleging that CCC violated Title IX along with its own policies, this effort fails for the reasons discussed in the Court's October 25, 2017 Opinion. Accordingly, the Court dismisses Doe's other claims against CCC (Counts III, IV, V, VI, VII, VIII, IX, X, XII, and XIII). Because Doe has failed to cure the deficiencies in his original Complaint despite ample time to do so, has admitted that he included these claims only for purposes of appeal, and has failed to request leave to amend, the Court's dismissal is with prejudice.[2] *See, e.g.*, *James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 400–01 (7th Cir. 2006) (rejecting plaintiff's argument that district court erred in dismissing complaint with prejudice where plaintiff did not request leave to amend); *Estate of*

---

[2] Counts I and II are defamation claims against Roe. Roe has not moved to dismiss those claims, and has instead filed an answer along with affirmative defenses and five counterclaims against Doe. (R. 53, Def. Roe's Answer.) Doe filed an answer to Roe's initial counterclaims (R. 36) and then an amended answer (R. 44), and Roe moved to strike portions of that amended answer. (R. 51, Def. Roe's Mot. to Strike.) Roe, however, filed that motion to strike before she had filed her answer to Doe's Amended Complaint (R. 53), and thus before Doe filed his most recent amended answer to Roe's counterclaims. (R. 58, Pl.'s Answer.) Accordingly, the Court denies Roe's Motion to Strike as moot because it does not address Doe's current answer. If Roe still takes issue with Doe's current answer, she may file a new motion to strike based on that document.

*Brown v. Arc Music Grp.*, 830 F. Supp. 2d 501, 510 (N.D. Ill. 2011), *aff'd,* 523 F. App'x 407 (7th Cir. 2013) (dismissing claim with prejudice because plaintiff failed to cure deficiencies in complaint despite sufficient time to do so) (citing *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011)); *Ennenga v. Starns*, No. 10 C 5016, 2012 WL 1899331, at *3 (N.D. Ill. May 23, 2012) (dismissing claim with prejudice because plaintiff failed to request leave to amend and attempt to amend would have been futile).

## II. Doe Has Failed to Allege Subject-Matter Jurisdiction

As an initial matter, the Court notes that Doe premises his Complaint on both federal question jurisdiction (due to the Title IX claims) and diversity jurisdiction (due to Doe residing in California and Roe residing in Maine). As noted above, the Court has dismissed Doe's Title IX claims with prejudice, and accordingly, the Court's jurisdiction over Doe's remaining breach of contract claim purportedly stems from diversity. Doe, however, has failed to sufficiently allege diversity jurisdiction. "[A]llegations of residence are insufficient to establish diversity jurisdiction. It is well settled that "[w]hen the parties allege residence but not citizenship, the court must dismiss the suit." *Held v. Held*, 137 F.3d 998, 1000 (7th Cir. 1998) (citations and quotations omitted); *see also Winforge, Inc. v. Coachmen Indus., Inc.*, 691 F.3d 856, 867 (7th Cir. 2013); *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012). Because Doe only alleges his residence and not his citizenship, he has failed to allege diversity jurisdiction. Similarly, he only alleges Roe's residence and not her citizenship. (R. 50, Am. Compl. ¶ 23.) Because this failure is easily curable and because the Court has already expended judicial resources assessing Doe's claims, the Court will consider Doe's breach of contract claim.

## III. Breach of Contract

CCC argues that Doe's breach of contract claim (Count XI) fails because Doe has failed to allege (1) an enforceable contractual promise, (2) that CCC breached, and (3) that he performed. CCC also argues that the Court should dismiss Doe's breach of contract claim because Doe has failed to allege that CCC's decision was arbitrary and capricious.

Under Illinois law, a breach of contract claim has four elements: (1) the existence of a valid and enforceable contract; (2) plaintiff's substantial performance; (3) defendant's breach of contract; and (4) resultant damages. *See Dual–Temp of Ill., Inc. v. Hench Control, Inc.,* 821 F.3d 866, 869 (7th Cir. 2016); *Hess v. Bresney*, 784 F.3d 1154, 1158–59 (7th Cir. 2015). Additionally, a college and its students have a contractual relationship, and the terms of that relationship are generally set forth in the school's catalogues and bulletins. *Raethz v. Aurora Univ.*, 805 N.E.2d 696, 699 (2004). In Illinois, a student has a remedy for breach of contract when there has been an adverse decision only the school made that decision arbitrarily, capriciously, or in bad faith. *Id.* (citing *Frederick v. Northwestern Univ. Dental School*, 617 N.E.2d 382, 387 (1993)). A college or university is not liable for exercising "its academic judgment unwisely." *Id.* at 700. To constitute a breach of contract, the school must dismiss the student without any rational basis. *Frederick*, 617 N.E.2d at 387. The burden on a plaintiff is high, and a court may not override the academic decision of a university "unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985).

Here, Doe's breach of contract claim fails because Doe has failed to allege that CCC's actions or decisions were arbitrary or capricious, that they were without rational basis, or that

they were a substantial departure from academic norms. Doe claims that CCC violated its own policies on various occasions, but in each instance, Doe's allegations, when considered along with the record evidenced in the documents attached to his Amended Complaint, are insufficient to show that CCC acted arbitrarily and capriciously. The Court considers each alleged breach in turn.

**A. Failure to Provide Notice and Failure to Provide Investigative Materials**

Doe claims, for example, that CCC breached its contract by failing to provide him notice of the allegations against him. Doe's allegations and the documents attached to his Amended Complaint, however, demonstrate that CCC gave him notice of the allegations on several occasions—February 3 from Sarah Shaaban at his preliminary meeting, April 4 in a letter from Dr. Anderson, and on April 19 and May 6 in additional letters from Anderson—well in advance of his hearing on May 23. (Ex. A1 28-31, 54-55, 83-84.) This early and consistent notice complied with CCC's SMP, and thus was not arbitrary or capricious. (Am. Compl., Ex. B, SMP §§ XIVC2-C3 (requiring notice of allegations at preliminary meeting and notice of charges against accused during fact-gathering stage)); *see also Doe v. Coll. of Wooster*, 243 F. Supp. 3d 875, 891 (N.D. Ohio 2017) (finding notice was fundamentally fair where it complied with school's misconduct procedure).

CCC similarly did not act arbitrarily or capriciously by failing to allow Doe to review the evidence against him as Doe claims. Contrary to Doe's claim, CCC provided Doe with the investigation file on May 12, more than 10 days before Doe's hearing on May 23, which aligned with the SMP's requirements. (Am. Compl. ¶¶ 58-59; SMP §XIVD3 (requiring disclosure of investigation materials 10 days before hearing.)) Courts regularly reject breach of contract claims where a university provided an accused student with the investigatory materials as

required by its policies. *Compare Doe v. W. New England Univ.*, 228 F. Supp. 3d 154, 177 (D. Mass. 2017) (dismissing breach of contract claim relating to failure to provide investigation materials where university provided all materials—including complainant statement, witness statements, and certain text messages—required by federal privacy laws and school policy), and *Xiaolu Peter Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 481 (S.D.N.Y. 2015) (rejecting breach of contract claim where university provided witness statements and other evidence to accused three days before the hearing, in accordance with the university's procedures), with *Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 193 (D.R.I 2016) (allowing breach of contract claim to survive where handbook provided that "the case administrator will respond' to the respondent's requests for information," and the university failed to comply).

### B. Failure to Conduct Prompt and Fair Investigation

Doe also claims that CCC failed to conduct a prompt and fair investigation, but again, Doe's own allegations, as well as the documents attached to his Amended Complaint, demonstrate that CCC's investigation was prompt and not arbitrary, capricious, or without any rational basis. Roe filed her complaint in early February, and CCC's assigned investigator interviewed Doe on February 3 and offered him the opportunity to provide additional evidence or witnesses. (Ex. A1 28-29.) After reviewing the results of this preliminary investigation, CCC's Title IX Coordinator, Beverly Anderson, concluded that a hearing was necessary, and on April 25, nearly a month before his hearing, Doe provided the names of multiple witnesses from the night of incident and a toxicology report relating Roe's physical state on the night of the incident. (Am. Compl. ¶ 53; Ex. A1 97-104.) This investigation was certainly prompt, and Doe has failed to allege that it was arbitrary and capricious. In line with the policies in the SMP, even viewing the allegations in the light most favorable to Doe, CCC met with and communicated

14

with both Roe and Doe throughout the investigation, gathered facts and witnesses, considered the evidence provided and the credibility of the parties, created an investigation report, and determined that a hearing was necessary. (SMP § XIVC); *see also Wooster*, 243 F. Supp. 3d at 891–92 (rejecting breach of contract claim and finding sexual assault investigation not unfair where investigator conducted interviews of witnesses and considered evidence provided by parties); *Dempsey v. Bucknell Univ.*, Civil Action No. 4:11–CV–1679, 2012 WL 1569826, at *18 (M.D. Pa. May 3, 2012) (breach of contract claim failed where allegations demonstrated that investigation into assault complaint was conducted).

### C. Failure to Reach Neutral Decision Based On Preponderance of Evidence

Doe next claims that CCC breached its contract by failing to reach a fair and neutral decision based on the preponderance of the evidence presented. As noted above, to sufficiently allege that a university breached its contract with a student by disciplining a student, the student must allege not just that the university "exercised its [] judgment unwisely . . . but that it did not exercise its [] judgment at all, instead acting arbitrarily or in bad faith in its treatment of the [student]." *Raethz*, 805 N.E.2d at 700 (rejecting breach of contract claim against university because plaintiff failed to show dismissal decision was arbitrary). Doe has not met that standard here. Doe's Amended Complaint and the attached documents demonstrate that CCC held a hearing after a thorough investigation and that the Hearing Panel considered evidence from both parties, text messages between the parties, statements from several witnesses, a polygraph report, and the toxicology report. (Am. Compl. ¶¶ 62-63; Ex. A1 139-44.)

The Panel identified several inconsistencies in Doe's statements relating to whether he initiated physical interaction with Roe and whether Roe ever asked him to stop engaging in any conduct. (*Id.* 142-43.) The Panel also reviewed the relevant text messages and found that they

15

demonstrated hesitancy on the part of Roe to engage physically with Doe despite Doe's repeated advances. (*Id.* 144.) The Panel also noted that the toxicology report submitted by Doe, which concluded that Roe suffered alcohol-induced amnesia, conflicted with several witness statements indicating she had not consumed much alcohol. (*Id.*) Ultimately, due to repeated "inconsistencies in [Doe's] statements" and the consistency of Roe's statements, the Panel concluded that Doe was not credible and that it was "more likely than not that [Doe] violated" CCC's policies in his interaction with Roe. (*Id.* 143-45.) While Doe may disagree with the Panel's decision to suspend him for one year, the documents Doe attached to his Amended Complaint indicate that the Panel seriously considered the evidence in reaching their decision, and Doe has failed to provide any allegations indicating that the Panel acted arbitrarily, capriciously, or irrationally. *See, e.g. Raethz*, 805 N.E.2d at 699-700 (rejecting breach of contract claim because student showed "no evidence of arbitrary, capricious, or bad-faith conduct toward [student] in dismissing her"); *Wooster*, 243 F. Supp. 3d at 894 (finding that disciplinary board had discretion to assess the credibility of witnesses in sexual assault hearing); *Pierre v. Univ. of Dayton*, 143 F. Supp. 3d 703, 713 (S.D. Ohio 2015) ("the issue before this Court is not whether the [hearing board] should have believed a certain party's version of events"); *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 755 (E.D. Tenn. 2009) (it is not for the courts to review "whether a sexual assault occurred, whether any such acts were consensual, or who, as between [the parties] is credible").

### D. Treating Female Students Differently Than How He Was Treated

Doe also claims that CCC breached its contract with him by treating female students who harassed him differently him. Again, contrary to Doe's claim, the documents indicate that Doe has failed to sufficiently allege that CCC acted arbitrary or capriciously in responding to his

complaints about harassment. Specifically, when Doe initially reported to CCC that he was physically assaulted and harassed, CCC Assistant General Counsel Adam Weiss responded promptly to Doe's letter and asked Doe to provide him with the names of the individuals who assaulted him and posted about him on social media. (Ex. A1 19.) Doe did not provide those names in response and later refused to meet with Beverly Anderson, CCC's Title IX Coordinator, about the incident. (*Id.* 22-25.) Later, on April 8, 2016, CCC Associate Dean Wilson-Taylor wrote to Doe that CCC was not able to initially identify the student who assaulted him, but that CCC had since identified the student and addressed the issue, and asked Doe to inform him if the student interacted with him at all. (Am. Compl. ¶ 32.) Ron Sodini, Associate VP for Campus Safety, also contacted Doe and met with him on April 14 and April 18 to address his concerns. (Ex. A1 54, 56.) Later, when Doe informed CCC that a CCC student had texted Doe's then girlfriend, who is now his wife, and told her he was a "rapist," CCC responded within days and informed Doe CCC had spoken to the student and told him not to have any contact with Doe or his wife. (Am. Compl. ¶ 41.) CCC also contacted Doe's step-mother to inform her that CCC was addressing the issues with Doe. (Ex. A1 72-73.)

CCC also, on several occasions, attempted to provide Doe with academic accommodations. CCC's Title IX Deputy Coordinator, for example, wrote to Doe on April 11 and offered to arrange an academic advisor for Doe, schedule a meeting with Anderson, or provide academic accommodations for Doe. (*Id.* 54.) Again, on April 29, Dr. Anderson responded to Doe's request for accommodations and asked him for information about the classes for which he needed an accommodation. (*Id.* 74.) The parties engaged in additional communications about accommodations, but ultimately, they never occurred. (*Id.* 75, 78, 94.)

17

While Doe's Amended Complaint contains several allegations about the way CCC responded to Roe's accusation of sexual assault, Doe has not provided any allegations that would indicate that CCC treated male and female students accused of non-sexual harassment differently. Quite the contrary, even viewed in the light most favorable to Doe, the allegations and documents attached to Doe's Amended Complaint demonstrate that Doe has failed to allege that CCC acted arbitrarily and capriciously in response to Doe's complaints of harassment.

In sum, in a breach of contract case against a university, "the burden of establishing arbitrary or capricious conduct is a heavy one. *Raethz*, 805 N.E.2d at 699 (2004) (citing *Frederick,* 617 N.E.2d 382). The plaintiff must show that the university's decisions were "without any discernible rational basis." *Holert,* 751 F. Supp. at 1301. Here, viewing the allegations in Doe's favor, and taking into account the documents Doe attached to the Amended Complaint, Doe has failed to allege that CCC acted arbitrarily or capriciously or that its investigation and ultimate decision to suspend Doe was without "any discernible basis." *Id.*[3] Because Doe has failed to request leave to amend and given the documents attached to Doe's complaint any amendment would be futile, the Court dismisses Doe's breach of contract claim with prejudice. *See, e.g.*, *James Cape*, 453 F.3d at 400–01 (rejecting plaintiff's argument that district court erred in dismissing complaint with prejudice where plaintiff failed to request leave to amend); *Ennenga*, No. 10 C 5016, 2012 WL 1899331, at *3 (dismissing claim with prejudice because plaintiff failed to request leave to amend and attempt to amend would have been futile).

---

[3] Because Doe has failed to allege that CCC's decisions were arbitrary and capricious, as required by Illinois law, the Court need not address CCC's other arguments for dismissal.

## CONCLUSION

For these reasons, the Court grants CCC's Rule 12(b)(6) motion to dismiss all Doe's claims against it with prejudice.[4]  The Court denies Roe's motion to strike portions of Doe's amended answer as moot.

**Dated:** January 22, 2018

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**

---

[4] The Court dismisses Doe's claim for declaratory judgment (Count VIII) because the Court has dismissed all Doe's substantive claims against CCC.  *Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002).